385 A.2d 1337

**COMMONWEALTH of Pennsylvania**

v.

**James McCLENDON, Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Jan. 11, 1977.

Decided April 28, 1978.

Joshua M. Briskin, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Jane Greenspan, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

On May 19, 1975, in a trial by jury, appellant, James McClendon, was found guilty of murder of the second degree, arson, and related charges. Post-verdict motions were

denied, and appellant was sentenced to life imprisonment on the charge of second degree murder and to a concurrent term of ten to twenty years imprisonment on the arson charge. Appellant appealed his murder conviction to this Court, and his conviction for arson to the Superior Court, which transferred it here.

Appellant contends that the trial court improperly expressed to the jury an opinion as to the proper degree of guilt and so worded its instructions that the jury had no choice but to find appellant guilty of second degree murder. We agree with appellant's contention, reverse the judgment of sentence for murder of the second degree, and remand for a new trial limited to the murder charge. Our disposition of this appeal leaves undisturbed appellant's conviction for arson.

There is no dispute as to the facts. On November 18, 1974, appellant, for retaliatory reasons, threw four firebombs at or into decedent's home. Decedent and his wife were the only persons inside the house. Decedent's wife, who was working in the downstairs kitchen, successfully awakened the decedent who had been sleeping upstairs. She testified that with the living room already aflame, the decedent followed her down the stairs and into the kitchen, but when she reached the gate in the back yard, she turned around to discover that her husband had not continued out of the house. She returned inside and called for her husband, at which point he hollered down from the second floor, "I'm going to put my clothes on." His return upstairs proved fatal; rescuers discovered him there, dead from smoke inhalation and thermal burns of the body surface.

We agree with appellant that the trial court's instructions to the jury, which consisted of the original charge and two responses to requests for additional instructions, not only impressed upon the jury the court's opinion as to the appropriate degree of guilt, but also effectively precluded the jury from returning any other verdict except second degree murder.

In its original charge, the court stated:

"[I]f you find that the defendant committed arson and that arson was the cause of the death . . . he is guilty of murder of the second degree. If you find that the defendant is not guilty of arson or if you find that he was guilty of arson but that the arson was not a cause of the death of the decedent, you should consider the charges of third degree murder and voluntary manslaughter which I shall now define for you."

Hence, the jury was instructed that it *should not consider* third degree murder or voluntary manslaughter unless it found that appellant did not commit arson or that the arson, if committed, was not the cause of death. That is not the law in this Commonwealth.

 The jury could have returned, pursuant to its mercy dispensing power or its awareness of extenuating circumstances, verdicts of either voluntary manslaughter or murder of the third degree even if it found appellant guilty of arson, and found that the arson caused the victim's death. *Commonwealth v. Hill*, 444 Pa. 323, 326, 281 A.2d 859, 860-61 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 356-57, 266 A.2d 726, 730-31 (1970). *See also Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617, 619-20 (1977).

At the conclusion of the trial court's original charge, the following colloquy took place:

"THE COURT: Gentlemen, are there any exceptions to the charge as already given?

[Prosecuting Attorney]: I have no exceptions.

THE COURT: Do you have any exceptions, [defense counsel]], to the charge as given?

[Defense Counsel]: Well, yes, your Honor. The one about voluntary manslaughter. I don't know the exact words but whether or not the decedent contributed to his own death would not be of any value. But I don't remember the exact wording.

THE COURT: Well, the wording was that if the arson was the cause of the death, the defendant is guilty of second-degree murder. Even though the decedent may

have contributed to his own death. I believe that is the law.

[Defense Counsel]: I will take exception to that.

THE COURT: All right, is there anything else?

[Defense Counsel]: No."

Whether defense counsel's above objection to the original charge raised the same issue now being raised is not entirely clear from the above colloquy. The issue now being raised, however, was clearly raised when the jury returned for additional instructions.

The court compounded the error in the original charge when it responded to the jury's first request for additional instructions. When the trial court was asked to repeat its instructions concerning murder of the second degree, murder of the third degree, and voluntary manslaughter, the trial court told the jury it could not find defendant guilty of arson and guilty of something less than second degree murder.

"If you find that the defendant is not guilty of arson or if you find that he was guilty of arson but that the arson was not a cause of the death of the decedent, you should consider the charges of third-degree murder and voluntary manslaughter. Let me repeat that. If you find that the defendant is not guilty of arson or if you find that he was guilty of arson but that the arson was not a cause of the death of the decedent, *then you should consider and only then you should consider the charges of third-degree murder and voluntary manslaughter which I shall now define for you.*" (Emphasis added.)

After repeating the definitions of voluntary manslaughter and murder of the third degree, the trial court stated,

"[I]f you find in this case there is an independent felony that the defendant beyond a reasonable doubt committed arson endangering persons, *then these definitions* [voluntary manslaughter and murder of the third degree] *are not applicable* and the definition of second degree murder which I have read to you is applicable." (Emphasis added.)

Defense counsel immediately excepted to these instructions. Counsel's exception was that the court's instruction was a mandate to the jury to find appellant guilty of murder of the second degree if it found him guilty of the arson charge. Defense counsel's exception, in effect, was that the trial court effectively told the jury not to consider any verdict but second degree murder if arson was committed. Defense counsel's motion for a mistrial was denied.

Despite these unequivocal commands to the jury not to consider voluntary manslaughter or murder of the third degree if it found appellant guilty of arson and that the arson legally caused the death, the jury sent a second note to the court for additional instructions. The note read:

"If the defendant is guilty of arson, which is a felony, can three and four be applied within third-degree murder and voluntary manslaughter?"

In other words, the jury was still interested in the possibility of finding appellant guilty of arson yet not of second degree murder. Pursuant to *Commonwealth v. Hill* and *Commonwealth v. Hoffman, supra, see also Commonwealth v. Whitfield, supra,* the jury should have received an affirmative answer. Nevertheless, the trial court responded in the negative based on its own opinion that "logic" militated against these lesser verdicts. At a conference in chambers out of the hearing of the jury, the court discussed the jury's question with counsel as follows:

"It seems to me the appropriate answer to that is if they found the defendant guilty of arson and the arson caused the death, then voluntary manslaughter and third-degree murder are logically out."

When defense counsel objected to that assessment and remarked that such was not necessarily so, the court responded:

"I think it is logic but it may not be in terms of mercy."

Rather than inform the jury that it could find appellant guilty of arson yet find him guilty of something less than second degree murder, the court concluded its charge as follows:

"I am obliged first of all, to repeat to you that under the law the Court cannot direct a jury as to what verdict it will render. This has been traditionally within the province of the jury. *However, I do believe that I can tell you what may logically be concluded on the basis of some of these other conclusions that are reached.* If you have concluded that the defendant in this case is guilty of arson, or if you should conclude that the defendant is guilty of arson, and you also conclude that arson was the cause of the death of the decedent, then logically *that excludes both third-degree murder and voluntary manslaughter.* Under the law a defendant is guilty of second-degree murder at least if he is guilty of a felony and death results from that felony, even if the felony is not exclusive of the death. *I don't know that I can put it any clearer than that.* Perhaps I should add that under the law the crimes of third-degree murder and voluntary manslaughter are applicable to a situation where no independent felony, or one of the enumerated felonies, can be the cause of death. *I think I am obliged to say to you that logically if you find the defendant guilty of arson, then he is guilty of at least second-degree murder.* On the other hand, also, because of the way the Supreme Court has worded it, that verdict is entirely within your decision. I may not tell you what to do." (Emphasis added.)

Viewing this charge as a whole, we believe the trial court's charge impermissibly infringed upon the exclusive province of the jury to determine the appropriate degree of guilt. Thus appellant was denied his right to be tried by an impartial jury.

██ Although this Court has recognized the duty of the trial court to aid the jury in understanding and clarifying the issues to be resolved, a charge to the jury must be "fairly and temperately stated clearly leaving the jury free to reach its independent conclusion." *Commonwealth v. Goins,* 457 Pa. 594, 598, 321 A.2d 913, 915 (1974).

In the present case, the jury was not left "free to reach its independent conclusion" on the proper degree of guilt. The

jury was first told they could consider third degree murder or voluntary manslaughter if and only if they found appellant not guilty of the arson charge or that the arson did not legally cause the victim's death. This was an erroneous instruction, for the jury indeed could have found appellant guilty of arson and murder of the third degree, or, arson and voluntary manslaughter. *Commonwealth v. Hill, supra, Commonwealth v. Hoffman, supra.*

Although the trial court's final words to the jury may have been a retreat from the court's earlier position, the attempted retreat, couched as it was in rather cryptic terms, could hardly have dispelled the impression earlier communicated and repeated to the jury. Moreover, the jury could have interpreted the cryptic remarks to mean that it was up to the jury to decide the arson issue. At best, the trial court's parting remarks could only have further confused the very matter about which the jury was already confused when it twice returned for instructions.

This case is on a much different footing than *Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977), and *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976). Those cases held that under appropriate conditions, it is permissible for a trial court to comment as to the evidence to support a verdict of voluntary manslaughter. Commenting on the evidence presented is very different than instructing a jury first, that voluntary manslaughter (or murder of the third degree) was a permissible verdict only if the defendant is acquitted of the underlying felony, and second, answering the jury's question of whether it could find the defendant guilty of the felony yet guilty of voluntary manslaughter by telling the jury that it would be illogical to do so but, because of the way this Court "has worded it," the degree of guilt was theirs to decide.

Since the trial court's instructions impermissibly influenced the jury's deliberation as to which verdict should be returned, appellant must be granted a new trial. *Commonwealth v. McNeill*, 462 Pa. 438, 341 A.2d 463 (1975); *Commonwealth v. Coins*, 457 Pa. 594, 321 A.2d 913 (1974);

*Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972).

Appellant also contends that the jury was improperly instructed as to the law of causation in criminal homicide. Our grant of a new trial on appellant's murder conviction makes it unnecessary to consider this issue.

Judgment of sentence for murder of the second degree reversed and a new trial granted. Judgment of sentence for arson affirmed.

LARSEN, J., filed a dissenting opinion in which NIX, J., joined.

LARSEN, Justice, dissenting.

I dissent. The majority continues to insist that trial judges give juries the option of finding a defendant guilty of voluntary manslaughter (provocation and passion) in all murder cases, even though there is no evidence of manslaughter. In the present case, there was only evidence of murder in the second degree (felony murder), but the majority states:

"The jury could have returned, pursuant to its mercy dispensing power or its awareness of extenuating circumstances, verdicts of either voluntary manslaughter or murder of the third degree even if it found appellant guilty of arson, and found that the arson caused the victim's death."

In effect, the majority is requiring a judge to tell a jury that not only does two plus two equal four, but it can, if the jury wishes, equal five. We instruct our juries to render a true and correct verdict based on the law (which should emanate from the facts) and facts presented at trial and neither sympathy nor passion is to influence them. Juries for centuries have been instructed, no matter how agonizing, to reach a *true* verdict. Juries are the guardians of truth. The majority wants juries to be able to render verdicts based on law which has nothing to do with the case so that the jury may, contrary to the facts, dispense "mercy". Mer-

cy is not the function of a jury—truth is. We have enough "mercy giving" entities: a sentencing judge, the parole board, the governor, etc. Now the majority would have a jury leave the realm of truth and become enmeshed in the world of social engineering. This perverts one of the foundations of our democracy, i. e. the jury system. Any confusion by the jury in this case was due to this perversion. I, therefore, dissent.[1]

NIX, J., joins in this dissenting opinion.

1. I adopt the legal rational set forth very ably by Mr. Justice Nix in his dissent in *Commonwealth v. Michael Francis Anthony Manning*, 477 Pa. 495, 384 A.2d 1197 (1978).